FILED
2018 Sep-19  PM 03:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **AAL GROUP, LTD.,** | ) |
| | ) **Civil Action No.:** _____ |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| | ) **DEMAND FOR JURY TRIAL** |
| **MAYNARD, COOPER & GALE, P.C.,** | ) |
| **JON D. LEVIN, and J. ANDREW** | ) |
| **WATSON, III,** | ) |
| | ) |
| **Defendants.** | ) |

---

## ORIGINAL COMPLAINT

---

COMES NOW Plaintiff AAL Group, Ltd. ("AAL Group"), and shows the court the following:

## I.

## FACTUAL SUMMARY

1.      An attorney owes a duty of loyalty to his client that is "very nearly sacred". *Chapman v. Klemick*, 3 F.3d 1508, 1512 (11th Cir. 1993).   Indeed, "the attorney-client relationship entails one of the highest fiduciary duties imposed by law." *Crooked Creek Properties, Inc. v. Ensley*, No. 2:08-CV-1002, 2009 WL 3644835 at *18, n. 20 (M.D.Ala. Oct. 28, 2009)(quoting *In re Hayes*, 183 F.3d 162,

168 (2d Cir. 1999)).

2.      Defendants were AAL Group's long-time, trusted attorneys and AAL Group expected and relied on Defendants to fulfill their high calling and sacred duty. In blatant violation of this trust, Defendants forsook all fiduciary and professional duties owed to AAL Group and instead chose the best interests of another client over those of AAL Group.

3.      In a secret scheme to enrich a separate client (and themselves individually) and unbeknownst to AAL Group, the Defendants orchestrated a series of transactions and events whereby the favored client acquired all assets of an entity that owed an enormous amount of money to AAL Group without that favored client also assuming those liabilities owed to AAL Group.  As a result of this transaction, AAL Group was completed divested of the value of over $6,000,000 in receivables owed to Plaintiff.

4.      On one side of the transactions and events structured by Defendants, there was an entity who retained all of the liability for the debts owed to AAL Group, but had no assets with which to satisfy those debts.  On the other side of the transaction structured by Defendants, there was the favored client who acquired all of the assets that would have otherwise been used to satisfy the debts owed to AAL Group, but who did not incur any liability on the debts.  AAL Group has literally been left with no recourse on over $6,000,000 of receivables owed to it other than

through this instant action.

5.    These transactions and events took place without AAL Group's knowledge and without the Defendants providing any advice or counsel to AAL Group in connection with these transactions and events that had a direct and devastating adverse impact on AAL Group.  Indeed, Defendants (despite owing fiduciary and professional duties to AAL Group and despite knowing of the existence of the receivables owed to AAL Group) made no effort whatsoever to protect AAL Group's interests.  To the contrary, Defendants took actions that directly and completely destroyed AAL Group's interests.

6.    When AAL Group notified their attorneys (*i.e.*, the Defendants) of this breach of duty and the resulting damage, Defendants did not own up to their actions at all.  Instead, Defendants had the audacity to try to sue their own clients in an attempt to "beat them to the punch" to obtain what Defendants believed was a more favorable forum.  Defendants' commitment to serve their own self-interests and to shirk the duties owed to AAL Group could not be more evident and continues even today.

7.    Defendants breached the applicable standard of care under the Alabama Legal Services Liability Act ("ALSLA"), which proximately caused the injuries and damages to AAL Group discussed herein. Furthermore, punitive damages are appropriate because one or more of the breaches of the standard of care by

Defendants were committed intentionally, fraudulently, wantonly, recklessly, and/or with knowledge that injury and damages would likely result.

## II.

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

9.    Personal jurisdiction over each of the Defendants comports with due process under the United States Constitution and Alabama state law as each Defendant is a resident of the State of Alabama.

10.    Venue is proper under 28 U.S.C. § 1391 because a defendant resides in this judicial district and all defendants are residents of the State in which this district is located and/or a substantial part of the events or omissions giving rise to the claims herein occurred in this district.

## III.

## THE PARTIES

**A.    Plaintiff**

11.    Plaintiff AAL Group, Ltd. is a British Virgin Islands company with its principal place of business in Sharjah, United Arab Emirates.

**B.    Defendants**

12.    Defendant Maynard, Cooper & Gale, P.C. ("Maynard") is a professional corporation organized under the laws of Alabama with its principal

office in Birmingham, Alabama.  This Defendant may be served with process by serving its registered agent:  Jim G. McLaughlin, 2400 Herbert Plaza, 1901 6th Avenue North, Birmingham, AL  35203.

13.    Defendant Jon D. Levin ("Levin") is an Alabama resident.  This Defendant may be served with process at his residence at 2118 Shades Crest Road SE, Huntsville, AL 35801.

14.    Defendant J. Andrew Watson, III is an Alabama resident.  This Defendant may be served with process at his residence at 428 Newman Avenue SE, Huntsville, AL  35801.

## IV.

## NATURE OF THE CLAIMS

15.    This is a civil action for money damages brought pursuant to the Alabama Legal Services Liability Act (Ala. Code § 6-5-570, *et seq.*).

## V.

## FACTUAL ALLEGATIONS

### A.    About AAL Group

16.    AAL Group is a helicopter maintenance, repair and overhaul company. AAL Group supplies a broad spectrum of rotary wing aviation solutions to customers all over the globe.  Notably, part of AAL Group's business is supporting troops fighting the war on terrorism, including through U.S. government contracts in the

Middle East.

17.    On February 3, 2011, AAL Group created AAL USA, Inc. ("AAL USA") to support AAL Group's existing contracts involving aviation services with the U.S. government and its prime contractors.  While AAL USA was originally formed as an affiliated company under the same ownership as AAL Group, the two entities became independently owned and operated in early 2014.    At all times relevant to this matter the two were not and are not related entities.

**B.    The Attorney-Client Relationship Between AAL Group and the Defendants.**

18.    Beginning in July 2013 and continuing uninterrupted through at least May 2017, AAL Group was a client of Maynard.  The principal attorneys at Maynard who performed legal services and provided legal advice to AAL Group were Defendants Levin and Watson.

**C.    The Contractor Relationship Between AAL Group and AAL USA, Inc.**

19.    AAL Group and AAL USA have worked together on many contracts and transactions, as explained below.[1]

**1.    The KN53 Aviation Equipment Contract**

20.    On October 1, 2011, AAL USA entered into a contract to supply and

---

[1] The contracts and transactions described below are collectively referred to herein as the "Contracts".  The amounts due to AAL Group under the Contracts are referred to herein as the "Receivables".

deliver certain aviation equipment to AAL Group, including delivery of KN35 aviation equipment. In connection with this contract, AAL Group made three advance payments totaling $855,393.29.

21.     While AAL USA subsequently delivered certain equipment under this contract, it did not pay the remaining balance of the advance payment, which amounted to $77,012.50.

22.     To date, AAL Group has not received any of the remaining equipment on this contract or a refund of the remaining advance payment.

23.     As a result of the conduct of the Defendants alleged herein, AAL Group has lost the ability to collect or recover any of these amounts other than through the instant action.

**2.  The Northrup Grumman Contract**

24.     Between April 2014 and February 2015, AAL USA entered into several Purchase Orders (the "POs") with Northrop Grumman ("Northrop") in support of a Certified Logistics Support ("CLS") contract to provide technical maintenance on Mi type helicopters. AAL USA, acting as the prime contractor, subcontracted work under three of the POs to AAL Group, including labor, travel, direct costs for testing supplies, visas, and other necessary procurement.

25.     AAL Group performed all of its duties and obligations as subcontractor under the POs. On January 29, 2015, AAL Group received a Certificate of

Completion for PO #6006-R1, which represents work performed by AAL Group as a subcontractor to the CLS Project. That same day, AAL Group received a Certificate of Completion for PO #6006-R2, which also represents work performed by AAL Group as a subcontractor in support of the CLS Project.

26. By February 2015, AAL USA owed AAL Group at least $3,580,257.20 for AAL Group's work under the Northrop POs.

27. To date, AAL Group has not received any payment on the Northrop POs.

28. As a result of the conduct of the Defendants alleged herein, AAL Group has lost the ability to collect or recover any of these amounts other than through the instant action.

### 3. The Airbus Iraqi MILDS ® Contract

29. On or around June 15, 2015, AAL USA entered a contract with AAL Group to supply and deliver Airbus MILDS® aviation equipment to AAL Group. Additional Agreement #1 was signed by the parties on January 19, 2016 to increase the price of the order by 1,670,020 Euros.

30. Ultimately, AAL Group, in addition to payment of full purchase price for equipment, was forced to provide an unsecured high risk loan to AAL USA in the amount of $900,000 because AAL USA was left with no assets as a direct result of Defendants' actions (as explained herein) and could not perform on its payment

obligations. This, in turn, led to AAL Group being unable to deliver equipment on schedule under its prime contract to the end user, putting AAL Group's reputation and future earnings potential at grave risk.

31.    As a result of the conduct of the Defendants alleged herein, AAL Group has lost the ability to collect or recover any of the $900,000 loan other than through the instant action.

### 4. The F2AST Certified Logistics Support (CLS) Contract

32.    AAL Group entered multiple purchase orders with AAL USA on September 1, 2015 (as modified on 03/31/2016) and on September 1, 2016 to provide labor and travel services as a subcontractor for AAL USA in support of AAL USA's prime contract.

33.    As a result of the conduct of the Defendants alleged herein, AAL Group has lost the ability to collect or recover $418,884.65 of the amount owed to AAL Group under these purchase orders other than through the instant action.

### 5. Calibration pursuant to F2AST Contract.

34.    AAL Group entered multiple purchase orders with AAL USA during the period of August 11, 2015 – August 10, 2016 to provide calibration services as a subcontractor for AAL USA in support of AAL USA's prime contract.

35.     As a result of the conduct of the Defendants alleged herein, AAL Group has lost the ability to collect or recover $21,386 of the amount owed to AAL Group under these purchase orders other than through the instant action.

### 6.  The MAG DS Helicopter Contract

36.     In January 2016, AAL Group contracted with AAL USA to lease to AAL USA one Mi 8MTV Helicopter.  In addition to the helicopter, AAL Group provided training, certification support, licenses, safety inspections, and maintenance services.

37.     As a result of the conduct of the Defendants alleged herein, AAL Group has lost the ability to collect or recover $208,000.00 owed to AAL Group pursuant to the June 2016 through October 2016 invoices on this contract for the work done prior to the execution of the Asset Purchase Agreement (discussed below).

### 7.  Miscellaneous Receivables.

38.     Additionally, as a result of the Defendants' conduct alleged herein, AAL Group has lost the ability to collect or recover any of the following amounts owed to AAL Group:

a.  **Science & Engineering Services** – AAL Group is owed $146,556 for work done in September 2016.  A check was issued on September 16, 2016 for payment of this amount to AAL Group, but, as a result of the Defendants' conduct alleged herein, AAL Group never received this

check and has never been paid for these services.

b. **2014 License Agreement**: AAL USA failed to pay rolling debt from 2014 to AAL Group due to a financial inability to pay that was created and/or aided by Defendants through the conduct alleged herein. The total amount of unpaid debt owed to AAL Group pursuant to this License Agreement is $900,000.

c. **AviaLux Training**: AAL Group provided training to AAL USA and has not been paid for these services. The total amount due to AAL Group for these services is $12,510.

d. **Aerodynamics debt**: AAL Group prepaid Aerodynamics $889,398 for certain equipment. Subsequent to this prepayment, Aerodynamics was unable to deliver the equipment and the prepayment was returned to AAL USA. AAL Group has not, in turn, received any portion of the returned prepayment from AAL USA.

**D.    Defendants Prepare Asset Purchase Agreement Between AAL USA, Inc. and Black Hall Aerospace, Inc.**

39.    Black Hall Aerospace, Inc. ("BHA") was incorporated in June 2015 to serve as an aircraft repair facility for AAL USA. The shareholders of BHA included Paul Daigle ("Daigle") and Keith Woolford ("Woolford").

40.    Beginning in August 2015 and continuing through January 2016 (unbeknownst to either AAL Group or AAL USA), the Defendants set up various

entities and transactions on behalf of Daigle, Woolford and BHA that resulted in the siphoning off of AAL USA's assets. This scheme resulted in the secret creation of multiple business entities, misappropriation of funds, self-dealing, interfering with business relationship, misrepresentation of material facts and/or conflicts, and failure to advise AAL Group (and others) of material facts and legal rights.

41.    On or about September 23, 2016, this scheme culminated with Defendants' preparation of an Asset Purchase Agreement (the "APA") under which all of AAL USA's assets were transferred to BHA. The purported reason for the APA was to permit BHA to continue performing services under AAL USA's various contracts, including the Contracts at issue herein, in light of representations from, *inter alia*, the Defendants to AAL USA that the United States government was requiring this transfer of assets.

42.    These misrepresentations on the part of the Defendants were knowingly false when made. These misrepresentations were made in the continuing effort to work towards the best interest of BHA to the exclusion of all other affected clients (including AAL Group).

43.    According to the terms of the APA, BHA purchased all of AAL USA's assets, including the Contracts. *See* APA, § 1.01(b)("Buyer shall purchase from Seller...all contracts of any kind whatsoever."). This acquisition of assets also included all of AAL USA's cash, including advances and loans extended by AAL

Group to AAL USA pursuant to certain of the Contracts discussed above.

44.     In connection with the execution of the APA, AAL USA and BHA also executed an Assignment and Assumption Agreement (the "Assignment"), which transferred AAL USA contracts to BHA.

45.     The Assignment provides that: "[BHA] hereby accepts such assignment and assumes all of [AAL USA's] duties and obligations under the Assigned Contracts and agrees to pay, perform and discharge, as and when due, all of the obligations of [AAL USA] under the Assigned Contracts accruing on and after the Effective Date."  Assignment at ¶ 2.

46.     Both the APA and Assignment were prepared by Defendants.  The Defendants included the provision in the APA specifically transferring all of AAL USA's contracts (including the Contracts described above) to serve the interests of Daigle and Woolford of BHA (without the knowledge of AAL Group and, upon information and belief, without the knowledge of AAL USA).

47.     Further demonstrating the lengths that Defendants were willing to go to ensure that BHA's interests were protected above the interests of all other clients, Defendants intentionally withheld information from AAL USA and AAL Group, misrepresented material information during the process of drafting the APA, and failed to provide independent counsel and advice to AAL USA or AAL Group with respect to the provisions of the APA regarding the nature and amount of the

liabilities and assets that would be transferred to BHA.

48.    Defendants went so far as to instruct Daigle and Woolford to not send drafts of the APA or communications between Daigle, Woolford, and Defendants regarding the APA to the counterparty to the APA, AAL USA.

49.    Watson and Levin, as partners at Maynard, made a clear choice to put the interests of BHA, Daigle and Woolford above all other clients (including AAL Group) and, as a result, inflicted enormous economic injury on AAL Group.

**E.    Defendants Make No Effort to Protect the Interests of AAL Group in Connection with the APA.**

50.    At all relevant times, Defendants were aware of the existence of the Contracts and the Receivables.

51.    In connection with the preparation and execution of the APA and the Assignment, Defendants made no effort to protect the interests of AAL Group in the Contracts or the Receivables.

52.    In connection with the preparation and execution of the APA and the Assignment, Defendants made no effort to inform AAL Group that they were providing advice to other clients that had a direct adverse impact on AAL Group's interests and created a clear conflict for Defendants.  Obviously, Defendants did not obtain a conflict waiver from AAL Group or otherwise deal with this conflict in any appropriate way.

**F.    BHA's Employment Offer to Defendant Levin.**

53.    Incredibly, during the time Defendants were preparing the APA and Assignment and providing legal advice to BHA regarding this transaction (to the exclusion of all fiduciary and professional duties owed to AAL Group), Defendant Levin was in active discussions with the owners of BHA about Levin going to work for BHA as CEO after the APA was finalized.  These discussions also involved Levin being granted shares in post-APA BHA.  Of course, Levin never disclosed this to anyone at AAL Group or, upon information and belief, anyone at AAL USA.

54.    Levin put his own financial interests (and those of his future employer, BHA) ahead of those of his other clients, including AAL Group who he knew would be economically damaged by the APA and Assignment that he and others at Maynard prepared.

**G.    Defendants' Conduct Divests AAL Group of the Full Value of the Receivables.**

55.    On March 14, 2017, AAL Group commenced litigation against BHA seeking recovery of the Receivables that were never paid by BHA after the APA and Assignment were executed.  *See AAL Group, Ltd. v. Black Hall Aerospace, Inc., et al.*, No. 2:17-CV-00399-KOB in the United States District Court for the Northern District of Alabama (the "BHA Action").

56.    On March 5, 2018, this Court entered an Order in the BHA Action dismissing the contract claims asserted by AAL Group against the defendants in the

BHA Action.

57.    The basis for this Court's dismissal was that, even assuming the validity of the APA, BHA was not liable for any liabilities on the Northrop, KN35 and Airbus Iraqi contracts because the APA assumed only liabilities arising after September 29, 2016 (the effective date of the APA) and these liabilities arose prior to that date.

58.    Although the liability under the other Contracts was not specifically alleged in the BHA Action (and, thus, was not part of the Court's order), they all fall directly under this Court's holding as an excluded liability based on the fact that they all arose prior to September 29, 2016.

59.    Based on this Court's holding in the BHA Action, the effect of the APA and Assignment prepared by the Defendants was that Defendants' client, AAL Group, was left with an inventory of Receivables that were rendered worthless and uncollectible.  The Defendants orchestrated and structured a transaction whereby (1) one side of the transaction (*i.e.*, AAL USA) was left with all of the liability for the Receivables but no assets with which to satisfy this liability and (2) the other side of the transaction (*i.e.*, BHA) was left with all of the assets that would have otherwise been used to satisfy the liability for the Receivables but no liability for the Receivables.

60.    Adding to the injury to AAL Group, the Defendants advised and assisted Woolford with a factoring arrangement under which certain Receivables

that were owed to AAL Group under the Northrop Grumman Contract were factored and assigned to a third party (Versant Funding, LLC) resulting once again in AAL Group not receiving any funds from the payment of these Receivables.

**H.     Defendants' Breaches of the Standard of Care.**

61.     During a time when Defendants owed fiduciary and other professional duties to AAL Group as a legal services provider, Defendants took numerous wrongful actions that were not in the best interests of AAL Group, were directly adverse to the interests of AAL Group, were detrimental to the interests of AAL Group, and caused direct economic injury to AAL Group.

62.     Additionally, on numerous occasions when Defendants owed fiduciary and other professional duties to AAL Group, Defendants wholly failed to provide any legal advice, explanation or counsel to AAL Group to ensure that the best interests of AAL Group were being protected.

63.     Each of these acts or omissions by Defendants breached the applicable standard of case under the ALSLA and resulted in enormous economic injury to AAL Group.

**I.     Defendants Initiate Litigation in Madison County State Court in an Attempt to Forum Shop.**

64.     On August 30, 2018, AAL Group notified Defendants of its claims and allegations against them and attempted to work toward a resolution without the need for litigation.

65.    Defendants did not respond at all to this correspondence.

66.    Instead, the Defendants rushed to commence a declaratory judgment action in the Circuit Court of Madison County, Alabama in an obvious attempt to realign the parties, forum shop, and rob AAL Group of its choice of venue as the true plaintiff in the dispute.[2]

67.    In other words, rather than work toward a resolution of a dispute involving extraordinary and obvious breaches of fiduciary and professional duties, the Defendants chose to sue their own client.  This conduct further places into focus Defendants' total abandonment of the duties it owed to its client, AAL Group.

## VI.

## CAUSE OF ACTION

### COUNT I – Alabama Legal Services Liability Act
### *By Plaintiff Against All Defendants*

68.    Plaintiff incorporates each and every allegation in paragraphs 1 through 67 above as if fully stated herein.

69.    Defendants, as AAL Group's attorneys, owed duties to AAL Group to act with such reasonable care, skill, and diligence as other similarly situated legal service providers in the same general line of practice in the same general area

---

[2] AAL Group will be moving to dismiss the Madison County action on a number of grounds.  In any event, the pendency of the Madison County action in no way affects this Federal action.  *See Barone v. Wells Fargo Bank, N.A.*, 709 Fed.Appx. 943, 947-51 (11th Cir. 2017).

ordinarily have and exercise in a like case.  Ala. Code § 6-5-580.

70.    Defendants breached the duties they owed to AAL Group.

71.    Defendants' breaches of duty proximately caused the injuries described herein and Defendants are liable for the damages suffered by AAL Group.

72.    Defendants breaches include, but are not limited to, the following:

a.  Failing to disclose conflicts of interest that arose with Defendants' preparation and implementation of the APA and Assignment that were directly adverse to the best interests of AAL Group;

b.  Failing to disclose to AAL Group that the terms of the APA and Assignment would essentially divest AAL Group of the full value of the Receivables;

c.  Creating and implementing transactions, events, agreements and arrangements that were directly adverse to the best interests of AAL Group, including the APA, Assignment, and factoring arrangement with  Versant Funding LLC;

d.  Providing advice to one client (BHA) that was directly adverse to the best interests of another client (AAL Group) and that would clearly result in enormous economic injury to that other client (AAL Group);

e.  Failing to provide legal advice or counsel to AAL Group in

connection with a transaction involving other clients that directly and adversely affected AAL Group;

f.  Failing to include AAL Group in the negotiations of the terms of the APA and Assignment;

g.  Failing to inform AAL Group of all information material to AAL Group's interests regarding the terms of the APA during the negotiation and preparation of the APA; and

h.  Failing to disclose Levin's self-dealing regarding his own employment with BHA and ultimately agreeing to that employment while continuing to represent AAL Group and while continuing to provide legal advice and services to BHA that were directly adverse to AAL Group.

73.    As a direct and proximate result of the Defendants' breaches of the applicable standard of case, Plaintiff has been injured and damaged and is entitled to recovery of compensatory damages in the amount of at least $6,273,500.33[3] punitive damages, attorneys' fees, interest, costs, and all other relief available to them.

---

[3] Plaintiff's investigation, to date, has identified damages in this amount. Plaintiff's investigation is not complete and further investigation, along with discovery in this case, may reveal additional damages. Plaintiff expressly reserves the right to amend his allegation of damages to reflect any additional damages discovered through this further investigation and the discovery in this matter.

74.    One or more of Defendants' above-described actions were intentional, willful, wanton and with reckless disregard for the rights of AAL Group. AAL Group, therefore, seeks and is entitled to punitive or exemplary damages in an amount to be determined at trial.

## VII.

## JURY DEMAND

75.    Plaintiff hereby demands a trial by jury in this action.

## VIII.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for:

a. the acts alleged herein to be adjudged and decreed to be unlawful under the state claims asserted herein;

b. compensatory damages in an amount to be ascertained at trial;

c. punitive or exemplary damages in an amount to be ascertained at trial;

d. pre- and post-judgment interest and attorneys' fees and costs as provided by law; and

e. all other relief, in law or in equity, to which Plaintiff may be entitled.

Respectfully submitted this 19th day of September, 2018.


LOEWINSOHN FLEGLE DEARY SIMON, LLP

*Jeven R. Sloan*

JEVEN R. SLOAN
ASB: 3412V51S
Landmark Center
2100 1st Avenue North, Suite 300
Birmingham, Alabama  35203
Telephone: 205-986-5027

ATTORNEYS FOR PLAINTIFF